IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| CHESTER LOWE HUFF, § | |
|    TDCJ-CID #582855, § | |
| § | |
| VS. § | CASE NO. 2:12-CV-254 |
| § | |
| TAMARA MCCULLOUGH, ET AL. § | |

## MEMORANDUM OPINION AND ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This civil rights action was filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, certain of plaintiff's claims against certain defendants are dismissed for failure to state a claim and/or as frivolous, while his remaining claims are retained, and service ordered on the defendants identified herein.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiff (D.E. 10), this case was referred to the undersigned magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 13). See 28 U.S.C. § 636(c).

## II. FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed his original complaint on August 1, 2012, and supplement on August 2, 2012, challenging as unconstitutional his security classification and continued confinement in administrative segregation ("ad. seg.").[1] (See D.E. 1, 2, 5). He identified the following four individuals as defendants: (1) Ms. Tamara McCullough; (2) Mr. Louis R. Herklotz; (3) Ms. Eva Villareal; and (4) Major Adam R. Gonzales.

On August 13, 2012, plaintiff filed a second supplement to his complaint (D.E. 11), and on September 13, 2012, he filed additional documentary evidence, as well as exhibits, in support of his claims. (D.E. 14, 16). On September 24, 2012, he filed a third supplement to his complaint. (D.E. 18).

---

[1] Offenders held in ad. seg. are housed in single-man cells and confined to their cells 23 hours a day.

2

A Spears[2] hearing was held on September 26, 2012. The following allegations were made in plaintiff's original and/or supplemental pleadings, or at the hearing:

In approximately March of 2010, plaintiff was placed in ad. seg. for allegedly making threats to escape.[3] Pursuant to TDCJ-CID policy, once an inmate is placed in ad. seg. he is evaluated every month concerning his continued detention in that setting. In addition, an ad. seg. inmate has quarterly reviews before the Unit Classification Committee ("UCC"), and the decisions of the UCC must be reviewed and approved by the State Classification Committee (SCC") in Huntsville, Texas.

On December 30, 2011, Officer Rivas notified plaintiff that, at his monthly ad. seg. review, it was determined that he would remain in ad. seg. based on his earlier comments to a mental health care provider that were construed as escape threats.

On January 13, 2012, plaintiff sent an I-60 to Virginia Jester, (not a defendant), challenging his assignment to ad. seg. Ms. Jester told plaintiff that the decision "was basically up to Huntsville," and that he would be seen by the SCC in March 2012.

On January 25, 2012, plaintiff talked with Sergeant Wessels. She told him that his continued detention in ad. seg. was not based on his escape comments to the mental health

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

[3] Plaintiff previously challenged his initial placement in ad. seg. arguing that prison officials had unconstitutionally relied on privileged information that he shared with a mental health care provider. Those claims were dismissed. See Case No. 2:12cv118.

care provider, but instead, because a weapon had been found in the wall in his cell, and as such, that his continued retention in ad. seg. was appropriate.

On January 26, 2012, plaintiff wrote a grievance complaining about Ms. Jester and Sergeant Wessels. Defendant Tamara McCullough, a grievance investigator responsible for picking-up the ad. seg. offenders' grievances, took plaintiff's Step 1 grievance. Ms. McCullough returned the grievance as expired. She returned subsequent grievances for having the wrong year. Plaintiff claims that, between January 26, 2012 through April 14, 2012, Ms. McCullough never ruled favorably on his grievances, and that she did so in part, to harass him and in retaliation for his complaining about her in grievances and lawsuits.

On March 22, 2012, plaintiff had an SCC hearing with Mr. Herklotz, Ms. Villareal, and Major Gonzales. Defendants refused to allow plaintiff to submit "documentary evidence" on his behalf. In addition, defendants refused to open plaintiff's confidential file or to evaluate fairly his progress in ad. seg. He claims that defendants are using ad. seg. as punishment. He claims also that defendants' actions are motivated by retaliation for his filing grievances and lawsuits.

### III. DISCUSSION

**A.  Legal Standard.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); accord Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id.

**B.     Official capacity claims.**

Plaintiff did not state in what capacity he is suing the named defendants, so it is assumed that he is suing the defendants in both their individual and official capacities.

The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998); Farias v. Bexar County Bd. of Trustees for MHMR Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991). Section 1983 does not waive the state's sovereign immunity, see Quern v. Jordan, 440 U.S. 332, 338 n. 7 (1979), and Texas has not consented to this suit. See Emory v. Texas State Bd. of Med. Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984). A suit against a state official in his or her official capacity is a suit against the official's office, and consequently, "it is no different from a suit against the State itself." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

To the extent plaintiff is suing a defendant in his or her individual capacity, that claim is effectively, one against the State of Texas, and as such, is barred by the Eleventh

Amendment. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002). Accordingly, plaintiff's claims for money damages against a defendant in his or her official capacity are dismissed with prejudice as barred.

**C.    Continued assignment in ad. seg.**

Plaintiff challenges his assignment to ad. seg. arguing that (1) he was wrongly placed there over two years ago; (2) the second disciplinary case in which a weapon was allegedly found does not equate to an escape attempt; and (3) at his last SCC, he was denied the right to put on evidence on his behalf and that defendants failed to evaluate properly his good behavior, such that his continued confinement is punishment. Thus, he raises a due process claim, that he was placed in ad. seg. without cause, and an Eighth Amendment claim that his continued confinement in ad. seg. constitutes cruel and unusual punishment.

**(1)    Due process.**

Plaintiff maintains that his continued placement in ad. seg. violates his due process rights. To maintain his due process challenge, plaintiff must establish that his transfer to ad. seg. deprived him of a liberty interest protected by the Fourteenth Amendment. Meachum v. Fano, 427 U.S. 215, 223 (1976). However, generally speaking, due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or to those that extend the length or duration of confinement. Sandin v. Conner, 515 U.S. 472, 484-86 (1995). Indeed, a prisoner has no liberty interest in his custodial classification. Wilkerson Stalder, 329 F.3d 431, 435-36 (5th Cir.2003). See also Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("[T]he Constitution

itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

Moreover, the Fifth Circuit has repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." Hernandez v. Velasquez, 522 F.3d 556, 562 (5th Cir. 2008) (citations omitted). In this case, it cannot be said that defendants' decision to keep plaintiff housed in ad. seg. is without some basis due to plaintiff's comments to the mental health therapist, which first landed him in ad. seg., and then the alleged more recent finding of a weapon. Also, even if his placement in ad. seg. was based on erroneous information, such facts do not give rise to a due process claim. See Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (placement in administrative segregation based on allegedly erroneous gang-member status was not a deprivation of a constitutionally cognizable liberty interest"); Harper v. Showers, 174 F.3d 716 (5th Cir. 1999) (placement of prisoner on lockdown under 24-hour observation did not implicate due process.)

Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification. Sandin, 515 U.S. at 484. Cases where segregated confinement is sufficiently atypical to implicate a due process liberty interest involve circumstances much harsher than those presented here. In Wilkerson v. Stalder, the Fifth Circuit held that due process *might* have been violated where the plaintiff had been kept on lockdown status for thirty years. Id. 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under Sandin). In another case, the

Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty interest, in part because the conditions there were "more restrictive than any other form of incarceration in Ohio." Wilkinson, 545 U.S. at 214. The Wilkinson Court noted that at the Supermax facility, "almost all human contact is prohibited." Id. at 223. Ohio Supermax prisoners are kept in single cells with solid metal doors that prevent communication from one cell to another; prisoners take all their meals alone in their cells rather than a common area; and "opportunities for visitation are rare" and are conducted through glass walls. Id. at 223-24. Ohio Supermax inmates spend 23 hours a day alone in their cells, where a light remains on at all times. Id. at 224. Moreover, confinement at the Supermax facility is indefinite, and otherwise eligible inmates are disqualified for parole consideration. Id. These conditions and others were sufficiently extraordinary that the Supreme Court concluded prisoners had a liberty interest in avoiding assignment to the Supermax facility. Id.

The thirty-year confinement in Wilkerson and the extreme conditions in Wilkinson are distinguishable from the present facts. Plaintiff has not shown that the conditions in the McConnell Unit ad. seg. pose a significant or atypical hardship. Moreover, his placement is reviewed monthly by McConnell Unit personnel, and he has a SCC hearing every six months. In addition, he sees mental health care individuals who also make recommendations. Accordingly, he fails to state a constitutionally recognizable claim under the Due Process Clause.

### (2)   **Cruel and unusual punishment.**

Plaintiff also contends that his placement in ad. seg. amounts to cruel and unusual punishment.

The Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be grounds for a constitutional claim." Hernandez, 522 F.3d at 562. The Supreme Court has noted that placement in solitary confinement for an *indeterminate* amount of time may amount to cruel and unusual punishment. See Hutto v. Finney, 437 U.S. 678, 686 (1978) (while an indeterminate time in solitary confinement may be unconstitutional, a determinate time where the conditions are not materially different from those affecting other prisoners are within the authority of the prison administrator and not cruel or unusual).

In this case, plaintiff's confinement in ad. seg. does appear to be indefinite. In addition, he claims that his grievances questioning his confinement are not considered or processed. Although he does get monthly reviews, plaintiff claims that they are perfunctory without any real consideration. As such, for purposes of § 1983, he adequately states an Eighth Amendment claim challenging his ad. seg. confinement, and service shall be ordered on the defendants.

### D.   **Retaliation.**

Plaintiff also contends that defendants have caused him to remain in ad. seg. in retaliation for his filing grievances and lawsuits.

A prisoner's First Amendment right of access to courts includes the right to seek redress through an established prison system. See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989). Prison officials may not retaliate against a prisoner for exercising this right. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct. Id. at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate") (citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. Woods, 60 F.3d at 1166.

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). However, some acts, even though they may be motivated by

10

retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Id. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

  Plaintiff claims that Mr. Herklotz relied on incorrect information in his file to keep him in ad. seg. He claims also that, on one occasion when he tried to talk to Mr. Herklotz, Mr. Herklotz screamed at him stating that it was his decision to keep him in ad. seg., and he then commented, "I know you filed a lawsuit on this before. I guess you will be filing another one on this," and then he told him to write a grievance. However, the fact that Mr. Herklotz might have relied on incorrect information does not state a retaliation claim as it poses no motive. Similarly, Mr. Herklotz's mere acknowledgment of plaintiff's prior lawsuit is not retaliatory, and indeed, he instructed plaintiff to file a grievance about his decision. Thus, there is nothing in Mr. Herklotz's behavior to suggest that, but for a retaliatory motive, he was keeping plaintiff in ad. seg. Accordingly, plaintiff's retaliation claim against Mr. Herklotz is dismissed.

  Similarly, as to defendants Ms. Villareal and Major Gonzales, plaintiff is attempting to equate his continued confinement in ad. seg. as evidence of retaliation. However, he offers no evidence, except his ad. seg. confinement, that the actions of either of these defendants in response to plaintiff exercising his First Amendment rights. Thus, plaintiff's retaliation claims against Ms. Villareal and Major Gonzales are dismissed.

As to defendant Ms. McCullough, plaintiff has submitted evidence demonstrating that he has filed repeated grievances against her. In addition, he has filed declarations from other offenders who testify that they heard Ms. McCullough tell plaintiff that he would not get his grievances back. Plaintiff's allegations suggest that, but for his filing lawsuits and grievances, Ms. McCullough would have no reason to not process his grievances. For purposes of § 1915A, plaintiff has stated a retaliation claim against Ms. McCullough, and this claim is retained. (See D.E. 16).

## IV. CONCLUSION

For these reasons, it is ORDERED that:

(1) Plaintiff's claims against defendants in their official capacities are dismissed as barred by the Eleventh Amendment;

(2) Plaintiff's claims alleging that he is being confined in ad. seg indefinitely as punishment are retained, and service shall be ordered on all named defendants;

(3) Plaintiff's retaliation claim against Ms. McCullough is retained, but his retaliation claims against the other defendants are dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

ORDERED this 8th day of November 2012.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE