UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

CHESTER LOWE HUFF,             §
                              §
        Plaintiff,            §
VS.                           §        CIVIL ACTION NO. 2:12-CV-254
                              §
TAMARA MCCULLOUGH, *et al*,   §
                              §
        Defendants.           §

## MEMORANDUM AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Chester Lowe Huff is a former prisoner in the Texas Department of Criminal Justice, Criminal Institutions Divisions ("TDCJ-CID"); the instant lawsuit concerns events that occurred while he was confined at the McConnell Unit in Beeville, Texas.[1]  Plaintiff claims that prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment when they classified him as an escape risk and assigned him to administrative segregation ("Ad Seg"), the most secure prison housing where the offender is locked in a single-man cell for 23 hours a day, for over two years. Plaintiff claims also that he was retained in Ad Seg in retaliation for his filing grievances about his classification.

Pending is defendants' motion for summary judgment to deny plaintiff's claims on the grounds that they are entitled to qualified immunity.  (D.E. 42).  Plaintiff was granted an extension of time until June 21, 2013, to file a response to defendants' summary

---

[1] Plaintiff filed several lawsuits while incarcerated, and in one case, Huff v. Jackson, Case No. 2:11-cv-149, he proceeded to trial, although ultimately, the jury decided that plaintiff take nothing on his claims.

judgment motion (D.E. 47); however, to date, plaintiff has not filed a response in opposition.

For the reasons stated herein, it is respectfully recommended that the Court grant defendants' summary judgment motion, and dismiss plaintiff's §1983 claims with prejudice.

## I.     Jurisdiction.

The Court has federal question jurisdiction.  28 U.S.C. § 1331.

## II.    Procedural background.

On August 1, 2012, plaintiff filed his original complaint, and on August 2, 2012, he filed supplements, challenging as unconstitutional his security classification and continued confinement in Ad Seg.  (See D.E. 1, 2, 5).  He identified the following four individuals as defendants:  (1) Ms. Tamara McCullough; (2) Mr. Louis R. Herklotz; (3) Ms. Eva Villareal; and (4) Major Adam R. Gonzales.

On August 13, 2012, plaintiff filed a second supplement to his complaint (D.E. 11), and on September 13, 2012, he filed additional documentary evidence, as well as exhibits, in support of his claims.  (D.E. 14, 16).  On September 24, 2012, he filed a third supplement to his complaint.  (D.E. 18).

An evidentiary hearing was hearing was held on September 26, 2012,[2] following which service was ordered on all four defendants.  (D.E. 20).  Plaintiff's claims against defendants in their official capacities were dismissed as barred by the Eleventh Amendment.  (D.E. 21 at 5-6).  In addition, plaintiff's claims challenging his placement

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

in Ad Seg on due process grounds were dismissed for failure to state a cognizable constitutional violation.[3] Id. at 6-8.

In December 2012, plaintiff again supplemented his complaint and filed additional evidence, including his own declaration.  (D.E. 25-28).

On December 21, 2012, defendants filed their Answer, and raised the defense of qualified immunity.  (D.E. 29).  In addition, defendants filed a counterclaim against plaintiff arguing that his claims against them were frivolous such that they are entitled to an award of attorney's fees. Id. at 5.

On February 6, 2013, plaintiff was granted leave to again supplement his complaint.  (D.E. 32, 33).

Following an extension of time to conduct discovery (D.E. 39, 40), on May 6, 2013, defendants filed the instant motion for summary judgment under seal.  (D.E. 41-45).

On May 16, 2013, plaintiff requested an extension of time to file a response to defendants' summary judgment motion (D.E. 46), and he was granted an extension until June 21, 2013.  (D.E. 47).  To date, plaintiff has not filed a response in opposition to the summary judgment motion.

---

[3] As discussed in the Memorandum Opinion and Order Dismissing Certain Claims and Retaining Case (D.E. 21), because a prisoner has no liberty interest in his custodial classification, due process protections attach only to those punishments that impose an atypical and significant hardship in relation to the ordinary incidents of prison life, or to those that extend the length or duration of the confinement.  Sandin v. Conner, 515 U.S. 472, 484-86 (1995). In general, administrative segregation is not considered an atypical or significant hardship within the prison setting to implicate due process protections. (See D.E. 21 at 7).

### III.     Summary judgment evidence.

In support of their motion for summary judgment, defendants offer the following:

Ex. A:          Relevant portions of plaintiff's grievance records from June – August 2010;

Ex. B:          Relevant portions of plaintiff's classification records;

Ex. C:          Relevant portions of plaintiff's medical records;

Ex. D:          Relevant portions of plaintiff's grievance records from January – April 2012;

Ex. E:          Affidavit of Lane Herklotz;

Ex. F:          Affidavit of Eva Villareal;

Ex. G:          Affidavit of Tamara McCullough;

Ex. H:          Affidavit of Adam Gonzales; and

Ex. I:          Transcript of plaintiff's trial testimony in Case No. 2:11-cv-149, Huff v. Jackson, et al., February 26, 2013.[4]

The summary judgment evidence establishes the following:

While in prison, plaintiff's wife passed away in November 2009. (DSJ Ex. C at 1). Thereafter, plaintiff claimed to suffer from depression and hallucinations, and he received counselling services at the McConnell Unit in October 2009, December 2009, and January 2010, to address those problems, although no prescription medications were ordered.  Id. at 7.

---

[4] Defendants' summary judgment motion (D.E. 42) will be referred to herein as "DSJ" followed by an exhibit letter.  For exhibits A – D, page citations will be to the Bates-stamped number at the bottom of the exhibit.

On April 19, 2010, plaintiff was voluntarily admitted to the Crisis Management Intervention Program at the Jester IV Unit in Richmond, Texas for a three-day evaluation of his depression and alleged expressions of suicide ideation.  (DSJ Ex. C at 1-8).  The Jester IV mental health care provider, Kimberly Samuels, met with plaintiff on the first day and found that he did not appear under any distress, nor did he exhibit any signs of psychosis.  Id. at 4.

On April 20, 2010, plaintiff was seen cell-side by Ms. Samuels for a progress check and evaluation.  (DSJ Ex. C at 6).  Plaintiff complained of auditory hallucinations and depression, but Ms. Samuels noted that plaintiff's expressed symptoms were "exaggerated, manipulative, and melodramatic."   Id.   He also complained about his property and current housing situation, and as Ms. Samuels was leaving his cell, plaintiff "threatened to escape from prison when returned to his unit of assignment."  Id.

On April 21, 2010, plaintiff underwent his last day of crisis management at the Jester IV Unit.  (DSJ Ex. C at 7).  Nursing notes indicate that plaintiff participated in crisis intervention counselling for three days with no episodes of self injury or behavioral dyscontrol, and he was eating, showering, and sleeping.  Id. at 7.  He was discharged from the Crisis Management department with no diagnosis of mental illness, with instructions to return to the McConnell Unit.  Id. However, on that same date, plaintiff was charged with a major disciplinary case, Case No. 20100238536, for the offense of threatening to escape, based on his statements the day prior to Ms. Samuels.[5]  (DSJ Ex. B

---

[5] In a previous case in this Court, Case No. 2: 12-cv-118, plaintiff challenged his initial placement in Ad Seg on the grounds that prison officials had unconstitutionally relied on

at 14).  Ms. Samuels reported that, during the August  20, 2010 progress check, plaintiff stated that he would try to escape if he was returned to the McConnell Unit.  Id. at 16. She also noted that plaintiff expressed reoccurring thoughts of escaping while working on the hoe squad, and also admitted to thoughts of using the hoe as a weapon to escape, or to be shot trying to escape.  Id.  Following Ms. Samuels report, Lieutenant Muhammad conducted further investigation during which plaintiff reiterated that he often had thoughts of escaping while working outside on the hoe squad at the McConnell Unit because he was close to his home in Victoria, as well as thoughts of using a hoe to escape, or to be killed trying to escape.  Id.

Plaintiff was returned to the McConnell Unit, and, due to the severity of the offense charged, the disciplinary case against him was transferred also.[6]  (DSJ Ex. A at 12).

On April 23, 2010, Major Barber recommended that plaintiff be housed in administrative segregation because he "did express an intention to escape from custody during an interview." (DSJ Ex. B at 13).   Major Barber noted that plaintiff was both a "current escape risk" and a threat to the physical safety of another or himself.  Id.

---

privileged information, that is, his statements to his mental health care provider, in assigning him to Ad Seg.  Those claims were dismissed as frivolous, and the Fifth Circuit affirmed the dismissal as such.  See Case No. 2:12cv118 at D.E. 10, D.E. 21.

[6] A July 16, 2010 computer-generated disciplinary case report indicates that plaintiff was charged with *two* separate disciplinary cases on April 21, 2010: Disciplinary Case No. 20100238536 and Disciplinary Case No. 20100325918.  (DSJ Ex. A at 10).  However, it appears that Disciplinary Case No. 20100325918 was the case number at the Jester Unit, and upon transfer to the McConnell Unit, the disciplinary action was given the Disciplinary Case No. 20100238536.

On May 14, 2010, the McConnell Unit administration petitioned the Disciplinary Review Board ("DRB") to approve plaintiff's continued placement in Ad Seg. (DSJ Ex. B at 10-11). By decision dated May 20, 2010, the DRB approved the McConnell Unit's recommendation to place and retain plaintiff in Ad Seg based on his making several threats of escape. (DSJ Ex. B at 7-8). The DRB also noted that plaintiff had thoughts of using physical force and a weapon, namely, a hoe, an instrument that could cause serious bodily injury or death. Id. at 7.

Plaintiff appealed the DRB's decision, and on July 21, 2010, the State Classification Committee ("SCC") affirmed plaintiff's classification and placement in Ad Seg. (DSJ Ex. B at 5).

On July 22, 2010, plaintiff filed a Step 1 grievance challenging his disciplinary conviction for threatening to escape and his assignment in Ad Seg. (DSJ Ex. A at 7-8).

Pursuant to TDCJ-CID policy, offenders housed in administrative segregation are reviewed by an SCC panel every 180 days to determine whether the inmate should remain in Ad Seg or be returned to General Population. (DSJ Ex. E, Herklotz Aff't at ¶ 4).

On March 3, 2011, plaintiff had an Ad Seg review hearing before the SCC panel. (DSJ Ex. B at 34-35). It was noted that plaintiff was in security detention because he was a physical threat to the safety of others and/or order at the McConnell Unit. Id. at 34. Following the hearing, the SCC panel, which did not include any named defendant, recommended that plaintiff remain on his current Ad Seg status until review on August 8, 2011. Id. at 35.

On August 30, 2011, plaintiff had an Ad Seg review hearing before an SCC panel; no defendant sat on this panel. (DSJ Ex. B at 36-37). Plaintiff expressed his desire to be released to General Population. Id. at 36. The SCC panel concluded that plaintiff remained a possible escape risk, and he was scheduled to remain in Ad Seg until review in March, 2012. Id. at 37.

On March 22, 2012, plaintiff had an Ad Seg review hearing before the SCC. (DSJ Ex. B at 38-39). The SCC panel was comprised of the following defendants: (1) Lane Herklotz, the SCC representative; (2) Major Gonzales, who originally petitioned for plaintiff to be placed in Ad Seg based on his escape threats; and (3) Eva Villareal, the Chief of Classification at the McConnell Unit. Id. at 39. As per Ad Seg placement review policy, the SCC panel reviewed plaintiff's disciplinary records, classification records, and the reason he was placed in Ad Seg. (DSJ Ex. E, Herklotz Aff't at ¶ 4). Plaintiff requested to be moved to General Population. Id. at 38. The SCC panel noted that plaintiff needed to receive unspecified medical attention, but it also continued plaintiff's placement in Ad Seg with a scheduled review in September 2012. Id. at 39.

On September 24, 2012, plaintiff went before the SCC for an Ad Seg review hearing. (DSJ Ex. B at 41-42). Plaintiff requested to be released to General Population. Id. at 41. The SCC granted plaintiff's request and he was released to General Population, custody classification G-4. Id. at 42.

## IV.    Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A

genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing

that a genuine issue for trial does exist.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.   "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  See Milchalik v. Hermann, 422 F.3d 252,262 (5th Cir. 2005).  When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law.   Id.  Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct.  Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

## V.   Discussion.

Plaintiff's is suing Lane Herklotz, Adam Gonzales, Eva Villareal, and Tamara McCullough in their individual capacities for monetary damages.   He claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by retaining him in Ad Seg.  He claims also that Ms. McCullough retaliated against him for filing grievances and lawsuits.

Defendants move for summary judgment to dismiss plaintiff's claims against them in their individual capacities arguing that there is no genuine issue of a material fact that they are entitled to qualified immunity to defeat those claims.

### A.    Qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).   To discharge this burden, the plaintiff must satisfy a two-prong test." Atteberry v .Nocana Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005).   First he must claim that the defendants committed a constitutional violation under current law.  Id. (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 555 U.S. at 236 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

**Step 1 – Constitutional violation.**

Plaintiff claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by continuing to house him in Ad Seg.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 8-10 (1992); Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety.  Farmer, 511 U.S. at 834.  Deliberate indifference is more than mere negligence.  Id. at 835.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  Id. at 837.

The Supreme Court has noted that placement in solitary confinement for an *indeterminate* amount of time may amount to cruel and unusual punishment. See Hutto v. Finney, 437 U.S. 678,  686 (1978) (while an indeterminate time in solitary confinement may be unconstitutional, a determinate time where the conditions are not materially different from those affecting other prisoners are within the authority of the prison

administrator and not cruel or unusual).   The Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be grounds for a constitutional claim." Hernandez v. Velasquez, 522 F.3d 556, 562 (5th Cir. 2008) (citations omitted).

Defendants argue that the conditions under which plaintiff was held in Ad Seg at the McConnell Unit were not "materially different" from those affecting other inmates at the Unit, and as such, did not amount to cruel and unusual punishment in violation of the Eighth Amendment under the standards set forth in   Hutto.   In the Hutto case, the prisoners were forced to live in windowless 8' x 10' cells with up to eleven other prisoners.  Id. at 682.  The cells contained no furniture other than a source for water and a toilet that could be flushed only from the outside.  Id.  The prisoners received fewer than 1,000 calories a day and their meals consisted of 4-inch squares of "gruel," described by the Supreme Court as "a substance created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste and baking the mixture in a pan." Id. at 683.

In the instant case, plaintiff has not complained about the actual conditions of Ad Seg itself other than objecting to his placement therein.  He has not alleged that his housing was unsanitary or that he suffered from a lack of food or basic minimal needs. He does not complain of extreme cold or heat.  As an Ad Seg inmate, he spent 23 hours a day in his cell with one hour a day out of his cell for physical exercise in an enclosed area on 8 Building, but he was seen by medical and his placement and classification were reevaluated every 180 days.  Although Ad Seg is certainly the most severe housing assignment at the McConnell Unit, with no privileges afforded the inmate, plaintiff fails

to offer any facts to suggest that the conditions in McConnell Unit's Ad Seg amount to "'a dark and evil world completely alien to the free world,'" the trial court's description of the Arkansas prison in Hutto. Id. at 682. Moreover, the summary judgment evidence establishes that plaintiff was placed in Ad Seg following his making repeated threats to escape combined with expressions of intent to use physical force and knowledge of the surrounding area. (DSJ Ex. B at 14). His placement, although not finite, was reviewed every 180 days, and at the SCC hearings, plaintiff was afforded the opportunity to give both an oral and a written statement. See DSJ Ex. B. There is no suggestion that plaintiff was forgotten with no access to review, and indeed, his total time spent in Ad Seg, from April 21, 2010 through September 24, 2012, was less than 3 years, not indefinite.[7] Plaintiff fails to establish that his confinement in Ad Seg for this time amounted to cruel and unusual punishment.   Thus, plaintiff fails to state a cognizable Eighth Amendment claim against the defendants.

2.      **Step 2 – Objective Reasonableness.**

At the second step of the due process analysis, a plaintiff must articulate the asserted constitutional right more specifically.   Thompson v. Upshur County, Tex., 245 F.3d 447, 460 (5th Cir. 2001).   Thus, "when the defendant moves for summary judgment

---

[7] **Error! Main Document Only.**In Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 203),  the Fifth Circuit held that *due process* might have been violated where the plaintiff had been kept on lockdown status for thirty years, but the case was not evaluated under the Eighth Amendment. The Supreme Court considered the conditions of a "Supermax" facility where "almost all human contact is prohibited," in Wilkinson v. Austin, 545 U.S. 209, 214 (2005), and found the conditions sufficiently extraordinary to conclude that prisoners had a *liberty* interest in avoiding assignment to such a facility; however, no federal court has held that isolation in and of itself violates the Eighth Amendment.  To the contrary, it is well recognized that segregation may be used to protect inmates or to observe them for classification.  (See e.g., 28 C.F.R. § 541.23).

based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendant violated the United States Constitution." Id. (citation omitted).  For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  Even officers who interpret the law mistakenly but reasonably are entitled to immunity. Creighton, 483 U.S. at 641.  The purpose of the "clearly established law" requirement is to avoid retroactive application of "newly created legal standards" to state actors who had no reason to know they were exposing themselves to liability.  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 928 (5th Cir. 1992).

Because plaintiff has failed to state a cognizable Eighth Amendment claim against the named defendants, the Court need not examine whether the actions of each named defendant was objectively reasonable.  See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).  However, it is appropriate to point out that the uncontested summary judgment evidence supports each defendant's claim to immunity at Step 2, as well.  For example, plaintiff sued defendant Tamara McCullough for violating his Eighth

Amendment rights on the alleged basis that she sat on Ad Seg reviews and voted to keep him confined in Ad Seg, despite his requests to be returned to General Population and his protestations that he had not made threats to escape.  However, in her affidavit, Ms. McCullough testifies that, in her capacity as a grievance investigator at the McConnell Unit, she had no authority to place plaintiff, or any offender, in Ad Seg, and no authority or voice in the decision to release plaintiff from Ad Seg.  (DSJ Ex. G, McCullough Aff't at ¶3).  Indeed, there is no evidence that Ms. McCullough ever attended an Ad Seg review hearing.  (See DSJ Ex. B).  To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995).  Here, there is no genuine issue of a material fact that Ms. McCullough had no personal involvement in plaintiff's initial placement in Ad Seg or in any subsequent decision to retain him there.  Thus, Ms. McCullough is entitled to qualified immunity to shield her from plaintiff's Eighth Amendment claims.

Similarly, plaintiff has sued defendants Herklotz, Gonzales, and Villareal for allegedly retaining him in Ad Seg in deliberate indifference to his health and safety. However, the summary judgment evidence shows that each of these defendants participated in only one Ad Seg review hearing, on March 22, 2012.  (DSJ Ex. B at 30-44).  As required at each Ad Seg review hearing, on March 22, 2012, defendants questioned plaintiff concerning his physical and psychological needs.  (DSJ Ex. E, Herklotz Aff't at ¶ 4; Ex. F, Villareal Aff't at  ¶ 4; and Ex. H, Gonzales Aff't at  ¶ 4).  In

addition, plaintiff was given the opportunity to make a verbal statement, or offer a written statement, detailing why he should be released from Ad Seg.  Id.

Defendant Herklotz, now retired, was employed as a State Classification Committee Program Member, Specialist III, and was employed by the TDCJ for over 25 years.  (DSJ Ex. E, Herklotz Aff't at  ¶ 2).  Although Mr. Herklotz does not specifically remember plaintiff or the March 22, 2012 SCC Ad Seg review hearing, he testifies that most SCC review hearings are conducted in the same manner and include a review of the offender's disciplinary records, classification records, and the reason the offender was placed in Ad Seg in the first place.  Id., Herklotz Aff't at ¶ 4.  As to plaintiff, Mr. Herklotz testified:

> Offender Huff was placed in administrative segregation because he threatened to escape from prison. When an offender threatens to escape, he is placed in administrative segregation to protect the security of the prison unit and the safety of the officers and the public.  Offenders with an escape risk are released from administrative segregation only after they have shown that there is no risk they will escape.
>
> At no time did I force Offender Huff or any offender to remain in administrative segregation as a means of punishment.  Offender Huff was confined in administrative segregation because he threatened to escape from prison, and thus posed a risk to the security of the prison unit and to the safety of the public.

(DSJ Ex. E, Herklotz Aff't at ¶ 5 and ¶ 6).

In failing to file a response to defendants' summary judgment motion, plaintiff has failed to offer any facts to suggest that Mr. Herklotz's actions on March 22, 2012 in

retaining plaintiff in Ad Seg were anything but objectively reasonable, and he is entitle to qualified immunity.

Eva Villareal is employed at the McConnell Unit as Chief of Classification.  (DSJ Ex. F, Villareal Aff't at  ¶ 2).  Although she does not recall specifically plaintiff or his March 22, 2012 SCC Ad Seg review, she testified that she has participated in many such review hearings, and that they are all conducted in a similar manner.  Id., Villareal Aff't at ¶ 3. She confirms Mr. Herklotz' testimony that during the hearing an offender's disciplinary and classification records are reviewed, as is the reason for the offender being placed in Ad Seg initially.  Id., Villareal Aff't ¶ 4.  The offender is given an opportunity to make a verbal or written statement, and after all of the information is considered, the committee makes a decision as to whether the offender should be retained in Ad Seg or released to General Population.  Id. Ms. Villareal states that plaintiff was retained in Ad Seg at that time because of "his history of threatening to escape."  Id. at ¶ 5.  Plaintiff has failed to offer any evidence to suggest that Ms. Villareal's actions at the March 22, 2012 SCC Ad Seg review were anything more than objectively reasonable, and she is entitled to immunity.

Adam Gonzales is employed as a Major at the McConnell Unit.  (DSJ Ex. H, Gonzales Aff't at ¶ 2).  Major Gonzales originally recommended that plaintiff be placed in Ad Seg following the Jester IV's report of his making escape threats.  (DSJ Ex. B at (DSJ Ex. B at 29).  Although he sat on the March 22, 2012 SCC panel, he does not recall plaintiff or the hearing, but reiterates that escape threats are taken seriously and justify placement in Ad Seg under TDCJ policy.  Id., Gonzales Aff't at ¶ 5.  The uncontested

summary judgment evidence establishes that Major Gonzales' actions were objectively reasonable in both recommending plaintiff's initial placement in Ad Seg, and as a member of the three-person SCC panel that voted to continue plaintiff's placement in Ad Seg upon consideration of the evidence presented.  Thus, Major Gonzales is entitled to qualified immunity.

The uncontested summary judgment evidence establishes that defendants are entitled to qualified immunity to shield them from plaintiff's Eighth Amendment claims, and thus it is respectfully recommended that summary judgment be granted in defendants' favor, and plaintiff's Eighth Amendment claims against them be dismissed with prejudice.

### B.   Retaliation.

Plaintiff claims that Ms. McCullough caused him to remain in Ad Seg  in retaliation for his filing grievances against her.

It is well-established that a prisoner's First Amendment right of access to courts includes the right to seek redress through an established prison system.   See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989).  Prison officials may not retaliate against a prisoner for exercising this right.  Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct.  Id. at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if

the act, when taken for a different reason, might have been legitimate") (citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. Woods, 60 F.3d at 1166.

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Id. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Plaintiff has submitted evidence demonstrating that he filed repeated grievances while housed in Ad Seg between April 2010 and September 2012. (See D.E. 2 at Ex. B,

D.E. 5 at Ex. J, D.E. 14).   In addition, he has filed declarations from other offenders who testify that they heard Ms. McCullough tell plaintiff that she would not process his grievances.  (D.E. 16).   However, plaintiff has failed to offer any evidence to suggest that Ms. McCullough's retaliatory actions caused or even contributed to his continued confinement in Ad Seg.   Indeed, the summary judgment evidence establishes that, as a unit grievance investigator, Ms. McCullough had no authority to assign plaintiff to Ad Seg or to release his back to General Population.  (DSJ Ex. G, McCullough Aff't at ¶3).  Moreover, to the extent plaintiff claims that Ms. McCullough failed to process or delayed his grievances, even if true and done with retaliatory intent, it did not cause plaintiff any injury because the evidence shows he was reviewed every 180 days, whether or not he filed a grievance.   As such, plaintiff cannot establish that, but for Ms. McCullough's retaliatory actions, he would not have been held in Ad Seg, and therefore, he fails to state an actionable claim of retaliation.[8]   Thus, it is respectfully recommended that Ms. McCullough be granted summary judgment in her favor, and plaintiff's retaliation claims against her be dismissed with prejudice.

---

[8] In addition, the summary judgment evidence demonstrates that plaintiff was not hindered from filing grievances, as his grievance record for his time in Ad Seg is over 150 pages.  (See DSJ Ex. D).  Some grievances were not processed, but this was because he submitted more than 1 per every 7 days.  In addition, plaintiff filed and litigated several lawsuits during this time.

## VI.    Recommendation.

For the reasons stated above, it is respectfully recommended that defendants' motion for summary judgment (D.E. 42) be granted in its entirety, and that plaintiff's claims against all defendants be dismissed with prejudice.

Respectfully submitted this 6th day of September, 2013.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).